ETCHISON *v.* DAIL.

Opinion delivered October 6, 1930.

*W. E. Beloate, R. C. Waldron* and *Smith & Blackford,* for appellant.

*L. B. Poindexter* and *J. H. Townsend,* for appellee.

McHANEY, J. This case involves the title to 8.14 acres of land, and is the second time it has been in this court, the opinion in the former case being unreported in the official reports. It is a suit by the appellee, Robert R. Dail, as executor of the estate of John R. Dail, in which the other heirs of John R. Dail joined, as plaintiffs, for the recovery from appellants of a small triangular piece of land described as all that part lying on the left bank, or north side, of Spring River, of the northeast quarter of the southwest fractional quarter in section 2, township 18 north, range 3 west, and for damages for the wrongful detention thereof. The court found the facts to be that in 1884 Luke L. Dail gave the land in controversy to his son John R. Dail, by verbal gift, and that said John R. Dail immediately entered into

possession thereof and continued in the possession of same until his death in October, 1913; that upon the death of John R. Dail, the appellee, Robert Dail, as executor, took possession of said land as assets of said estate for the payment of debts due by the estate, and that he, as such executor, continued in the possession thereof until the latter part of 1923, when appellant, Etchison, took the possession from him unlawfully; that the possession of said land by the said John R. Dail and the said Robert Dail, executor, was actual, open, notorious, adverse, peaceable, continuous and uninterrupted from 1884 until the latter part of 1923, under a claim of absolute ownership and without any adverse claim; that appellants had been in the unlawful possession of said land for a period of six years at a rental value of $40 per year, or $240, less the taxes paid by appellants during that time, which amounted to the sum of $23.48, for the years 1923 to 1927, inclusive; and that the appellees had been damaged in the sum of $200 by reason of the wrongful detention of said land. The court further found that large claims had been filed against said estate, and that the personal property thereof was insufficient to pay the debts; that the appellees are the owners of said lands by adverse possession, as tenants in common, subject to the right of the executor to hold same until all probated claims against said estate were disposed of. A decree was entered for possession of said land in favor of appellees, and for damages, in the sum of $200 for the unlawful detention thereof. This appeal followed.

We think the evidence amply supports the findings of the court as above stated. Such findings are not against the weight of the evidence, but, on the contrary, are supported by the preponderance thereof. Appellant first contends for a reversal of the case that the executor had no right to recover for the purpose of paying the debts. The former appeal in this case settled that matter against appellants. The executor was holding the land in controversy, as well as other land, and was

gradually paying the debts from the rents and profits, and had partially succeeded in doing so. As long as the debts of the estate remained unsatisfied, the lands belonging to the estate were assets in the hands of the executor for the payment of claims. The fact that they were not sold for this purpose did not concern appellants, as they were neither creditors nor heirs, and no complaint is made in this record by either heirs or creditors by reason of the delay in failing to pay the debts. As a matter of fact, all the heirs joined in this litigation for the recovery of the lands. ur statute, § 152, C. & M. Digest, provides that "Lands and tenements shall be assets in the hands of every executor or administrator for the payment of the debts of the testator or intestate." Upon his appointment and qualification as executor of the will of the deceased, John R. Dail, he took possession of all the land of the testator as assets of the estate needed for the payment of debts. During the course of the administration of the estate, he was deprived of it wrongfully by appellants, the debts remaining unpaid. He is entitled, therefore, to maintain this suit. In *Burton* v. *Gorman*, 125 Ark. 141, 188 S. W. 561, it was held that the lands of the decedent are assets in the hands of the executor or administrator, and deemed to be in his possession and subject to his control for the payment of the debts of the decedent, and that an administrator may maintain ejectment to recover possession of lands, when necessary for the payment of the debts of the estate, without joining the heirs in the suit. See also *Massey* v. *Doke*, 123 Ark. 211, 185 S. W. 271. Many other cases might be cited to the same effect.

Appellants next contend that title by limitation in the Dails has not been established. We have already stated that the court found such to be the fact, and that the evidence clearly preponderated in favor of the court's findings. We do not deem it necessary to enter into a discussion of the testimony given by the various witnesses who testified in the case. We think the evidence establishes beyond question the adverse posses-

sion claimed by appellees down to the time when such possession was interfered with by appellants, and that the possession was, in fact, adverse and not permissive, from the Browns.

It is next insisted that the appellees are estopped by laches. It is said that the appellees stood by and let William Brown deed the land to his wife, M. E. Brown, in 1908, and permitted the heirs of William and Mary Brown to sell and mortgage said land, all of which was a matter of record, and are now estopped from claiming same. Appellees, however, were not bound to take notice of these deeds and mortgages referred to, as they did not appear in their chain of title. See *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958, and cases there cited. See also *Gee* v. *Hatley,* 114 Ark. 376, 170 S. W. 72. Nor do we think the evidence justifies the argument of counsel for appellant that the Dails recognized the Brown title, through which appellants claim. The evidence was disputed in this regard, and we cannot say that the chancellor's finding was against the preponderance of the evidence. We have reached the conclusion that the Browns had no record title to this particular tract of land.

Some reliance is placed by appellants on the payment of taxes for a period of years. Appellants' grantors appear to have paid the taxes thereon from 1914 to 1923, and appellants paid them from 1923 to 1927. Appellants' payments of taxes from 1923 to 1927 were made while this suit was pending, as it began in August, 1924. The payments made by Joe Brown, from 1914 to 1923, were made without knowing that he was paying on it, and it is evident, from the testimony of Robert Dail, that he omitted paying on it without knowing that the taxes he did pay did not cover this particular tract of land. Moreover, this is not "unimproved and uninclosed land," such as is mentioned in § 6943, C. & M. Digest, and that payment of taxes under the conditions as shown by the record in this case could not possibly invest title in appellants. We find no error, and the judgment is accordingly affirmed.