ALCOA *v.* Carroll E. CARLISLE

CA 98-781                 992 S.W.2d 172

Court of Appeals of Arkansas
Division III
Opinion delivered June 16, 1999

*Rose Law Firm*, by: *Phillip Carroll*, for appellant.

*Kaplan, Brewer & Maxey, P.A.*, by: *Silas H. Brewer, Jr.*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellee Carroll E. Carlisle, who is sixty-five years of age, brought a workers' compensation claim against appellant Aluminum Company of America (ALCOA) on March 2, 1993, alleging that he had suffered hearing loss as a result of his employment. ALCOA defended, in part, on the ground that Mr. Carlisle's claim was barred by the applicable two-year statute of limitations. Arkansas Code Annotated section 11-9-702(a)(1)(A) (Repl. 1996) provides:

> A claim for compensation for disability on account of an injury, other than an occupational disease and occupational infection, shall be barred unless filed with the Workers' Compensation Commission within two (2) years from the date of the compensable injury. If, during the two-year period following the filing of the claim, the claimant receives no weekly benefit compensation and receives no medical treatment resulting from the alleged injury, the claim shall be barred thereafter.

After a hearing, the Workers' Compensation Commission found that the claim was not barred by the statute of limitations. Relying on *Hall's Cleaners v. Wortham*, 311 Ark. 103, 842 S.W.2d 7 (1992), the Commission ruled that the limitations period had not started to run because Mr. Carlisle had never suffered a loss in earnings as a result of his alleged injury. The Commission further determined that Mr. Carlisle suffered a 5.6% permanent impairment to his hearing as a result of his employment, and awarded benefits pursuant to that finding. In addition, ALCOA was ordered to provide Mr. Carlisle with amplification devices for treatment of his condition.

ALCOA now appeals the decision of the Commission. For reversal, it argues that the Commission erred in finding that the claim was not barred by the statute of limitations. ALCOA also contends that the Commission erred in basing its decision on a single audiogram performed in 1993, and in ignoring nonwork-related causative factors such as age, nonwork-related noise, and preemployment hearing loss.

Mr. Carlisle testified on his own behalf at the hearing before the Commission. He stated that he began working for ALCOA in 1956 and was laid off in 1958. He subsequently attended a body and fender school, and was recalled to work for ALCOA in 1960. Mr. Carlisle has worked for ALCOA since 1960, and continues to work there.

Mr. Carlisle worked around the "ball mills" from 1962 to 1965. He described this area as being very noisy, and stated that he worked without ear plugs. Since 1965, he has worked in several different buildings with varying noise levels. Mr. Carlisle testified that he started wearing ear plugs when they were made available in the 1970s or 1980s.

Mr. Carlisle indicated that he has been experiencing ringing in his ears for the past several years. He stated that the ringing started when he was working near the ball mills in the early 1960s, but at that time it would go away. Mr. Carlisle explained that, for the last five or six years, "I have a ringing in my ears, its like crickets, but it stays there all the time." He further stated:

> I've known for the last ten years that noise can damage my hearing and I wear hearing protection. When you start losing your hearing and you have a ringing in your head, you know it. I presumed for the last ten or fifteen years it was caused by noise at the plant. I'm not sure that's what it was but I presumed it was. I didn't have any other explanation for it. And I knew I had ringing in my ears. I knew it interfered with my hearing.

ALCOA performed periodic audiograms on its employees beginning in 1971. After the tests were performed, the employee would get a letter that, among other things, informed him of the results. In April 1989 and April 1990, Mr. Carlisle received letters informing him that his hearing had remained unchanged. Then, on April 23, 1991, he received the following correspondence:

> Recently you had your hearing checked in the Medical Department, and the results indicate that there has been a decrease in your hearing ability. This diminished ability in hearing may be due to several factors: aging, medication, or noise. Although you are not currently exposed to excessive amounts of noise in your job, to prevent further hearing changes, you are encouraged to wear hearing protection while working around noisy off-the-job

equipment such as tractors and chain saws, or while participating in noisy hobbies, such as target shooting.

Dr. Michael E. Winston gave Mr. Carlisle an audiological evaluation on December 8, 1993, and reported that Mr. Carlisle was suffering from hearing loss and was a candidate for binaural amplification. Dr. David J. Orchik reviewed the test results provided by Dr. Winston and interviewed Mr. Carlisle, and he concluded that Mr. Carlisle was suffering a 6% hearing impairment.[1] Dr. Orchik further testified that it was his belief that the hearing loss is related to Mr. Carlisle's employment with ALCOA, and that Mr. Carlisle would benefit from amplification devices.

ALCOA's first argument is that the Commission erred in failing to find that Mr. Carlisle's claim was barred by the two-year statute of limitations. We find that the Commission erred in ruling that the statute of limitations was inapplicable, and we reverse and remand on that basis.

■ ■ In resolving this issue, we are guided by the precedent set in *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999), a recent opinion delivered by our supreme court that reversed our decision published at 63 Ark. App. 160, 975 S.W.2d 863 (1998). In that case, the supreme court held as follows:

> The Court of Appeals cited Larson's treatise on Workers' Compensation Law for the proposition that for scheduled injuries, compensation for a specified number of weeks is payable *without regard to the presence or absence of wage loss* during that period and that the effect on earning capacity is a *conclusively presumed* one, instead of a specifically proved one based on the individual's actual wage-loss experience. This theory means that a claimant seeking benefits for a scheduled injury is not required to prove a loss of earnings or earning capacity in order to be entitled to compensation. The impact on a claimant's earnings or earning capacity is *conclusively presumed*.
>
> Applying this theory to the two-prong test recited in *Hall's Cleaners, supra*, a work-related noise-induced hearing-loss injury

---

[1] The Commission reduced Mr. Carlisle's hearing impairment rating to 5.6% using Dr. Winston's report and AMA guidelines. This adjustment is not at issue in this appeal.

does not become compensable until (1) the injury develops or becomes apparent, and (2) the claimant suffers a loss in earnings on account of the injury, *which loss is conclusively presumed.* Because the statute of limitation does not begin to run until both elements of the rule are met, and because of the *conclusive presumption* as to loss of earnings, which satisfies the second element, the statute of limitation with respect to work-related noise-induced hearing loss begins to run when the hearing loss becomes apparent to the claimant.

337 Ark. at 104, 989 S.W.2d at 156-7. (Emphasis in original.)

The supreme court then concluded:

> Here, appellee became aware of his hearing loss in February 1978. The statute of limitation began to run in February 1978, and because his hearing did not continue to deteriorate[2], appellee's claim became time-barred in February 1980, pursuant to Arkansas Code Annotated § 11-9-702(a)(1) (1987).

*Id.* (Footnote ours.)

▮ In the instant case, the Commission found that the statute of limitations never started to run because Mr. Carlisle had not suffered any wage loss, and in light of the decision in *Minnesota Mining & Mfg. v. Baker, supra,* this conclusion was erroneous. Consequently, we reverse and remand to the Commission for it to make findings of fact and conclusions of law in light of the supreme court's decision in *Minnesota Mining & Mfg. v. Baker, supra.* Because we must reverse and remand on the limitations issue, we do not reach the substantial evidence argument raised by appellant.

Reversed and remanded for further proceedings consistent with this opinion.

CRABTREE and ROAF, JJ., agree.

---

2 Whether a continued deterioration of work-related hearing-loss affects application of the two-year limitations period has not been presented to us.